## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| BETTY WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. CIV-16-785-D** |
| MIDWEST PERFORMANCE PACK, | ) | |
| Inc., f/k/a MATADOR PROCESSORS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

### DEFENDANT MIDWEST PERFORMANCE PACK, f/k/a MATADOR PROCESSORS, INC.'S MOTION FOR SUMMARY JUDGMENT

---

Adam W. Childers, OBA #18673
Melissa R. McDuffey, OBA #32463
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
adam.childers@crowedunlevy.com
melissa.mcduffey@crowedunlevy.com
ATTORNEY FOR DEFENDANT
MIDWEST PERFORMANCE PACK f/k/a
MATADOR PROCESSORS, INC.

DATE: May 8, 2017

## **TABLE OF CONTENTS**

PAGE

INTRODUCTION AND FACTUAL BACKGROUND ................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS .............................................. 4

ARGUMENT AND AUTHORITY ............................................................................... 9

I.     MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ADEA CLAIMS BECAUSE MPP HAS EMPLOYED LESS THAN TWENTY EMPLOYEES AT ALL TIMES RELEVANT TO PLAINTIFF'S ALLEGATIONS ..................................................................................... 9

II.    MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM BECAUSE PLAINTIFF DID NOT ENGAGE IN PROTECTED OPPOSITION TO DISCRIMINATION, AND SHE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES ...................... 10

     A.    Plaintiff did not engage in protected opposition to discrimination, and therefore, plaintiff's OADA claim for retaliation fails as a matter of law ................................................................................... 11

     B.    Plaintiff failed to exhaust her administrative remedies for her retaliation claim ..................................... 12

III.    MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF AGE DISCRIMINATION BECAUSE THE UNDISPUTED EVIDENCE PROVES THAT AGE WAS NOT THE DETERMINING FACTOR IN THE DECISION TO TERMINATE PLAINTIFF'S EMPLOYMENT ................................................................................... 13

     A.    MPP has satisfied its stage two burden by stating its legitimate, non-discriminatory reason for firing the plaintiff ....................................................... 14

     B.    There is no evidence that MPP's stated reason for termination was pretext for discrimination ................. 16

i

IV.   MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ERISA CLAIMS BECAUSE THE UNDISPUTED EVIDENCE SHOWS THAT MPP DID NOT HAVE A RETIREMENT PROGRAM IN WHICH PLAINTIFF COULD HAVE A VESTED INTEREST .......................... 20

V.   MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM BECAUSE THE UNDISPUTED EVIDENCE SHOWS THAT PLAINTIFF WAS AN AT-WILL EMPLOYEE WITH NO EXPECTATION THAT SHE HAD CONTRACTUAL RIGHTS TO CONTINUED EMPLOYMENT ................................................................................. 21

VI.   MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM BECAUSE MPP DID NOT ENGAGE IN EXTREME AND OUTRAGEOUS CONDUCT AND PLAINTIFF DID NOT SUFFER SEVERE EMOTIONAL DISTRESS ..................................................................... 24

CONCLUSION ......................................................................................................... 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Zubaidy v. TEK Indus., Inc.*,
  406 F.3d 1030 (8th Cir. 2005) ................................................................. 16

*Anderson v. Okla. Temporary Servs., Inc.*,
  1996 OK CIV APP 90, 925 P.2d 574 ...................................................... 25

*Antonio v. Sygma Network, Inc.*,
  458 F.3d 1177 (10th Cir. 2006) ............................................................... 17

*Bennett v. Windstream Comm., Inc.*,
  30 F. Supp. 3d 1243 (N.D. Okla. 2014) .................................................. 10

*Black v. Baker Oil Tools, Inc.*,
  107 F.3d 1457 (10th Cir. 1997) ......................................................... 22, 23

*Bradley v. Okla. Med. Research Found.*,
  No. CIV-12-339-M, 2013 WL 791228 (W.D. Okla. March 4, 2013) ........................ 25

*Burk v. K-Mart Corp.*,
  770 P.2d 24 (Okla. 1989) ................................................................... 21, 22

*Coghlan v. Am. Seafoods Co., L.L.C.*,
  413 F.3d 1090 (9th Cir. 2005) ................................................................. 17

*Computer Publ'ns, Inc. v. Welton*,
  2002 OK 50, 49 P.3d 732 ........................................................................ 24

*Eddy v. Brown*,
  1986 OK 3, 715 P.2d 74 ........................................................................... 25

*Edwards v. Creoks Mental Health Servs., Inc.*,
  505 F. Supp. 2d 1080 (N.D. Okla. 2007) ................................................. 18

*Fifer v. City of Tulsa*,
  12-CV-0408-CVE-FHM, 2012 WL 4758127 (N.D. Okla. Oct. 5, 2012) ................... 26

*Garner-Hon v. St. John Health Sys., Inc.*,
  No. 09-CV-0277-CVE-FHM, 2010 WL 830611 (N.D. Okla. Mar. 2, 2010) ................ 27

*Hayes v. Eateries, Inc.*,
905 P.2d 778 (Okla. 1995) ....................................................................... 23

*Haynes & Boone, LLP v. Chason*,
81 S.W.3d 307 (Tex. App. 2001) .............................................................. 26

*Hinds v. Sprint United Mgmt. Co.*,
523 F.3d 1187 (10th Cir. 2008) ......................................................... 11, 12

*Hinson v. Cameron*,
1987 OK 49, 742 P.2d 549 ........................................................................ 23

*Janzen v. Watonga Hosp. Trust Auth.*,
No. CIV-11-70-D, 2012 WL 3921524 (W.D. Okla. Sept. 7, 2012) ........... 27

*Lacher v. Bd. of Cnty. Comm'r for Okla. Cnty.*,
No. CIV-11-1038-M, 2013 WL 268983 (W.D. Okla. Jan. 24, 2013) ........ 27

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) ................................................................................. 20

*Lowe v. J.B. Hunt Transport, Inc.*,
963 F.2d 173 (8th Cir. 1992) .................................................................... 18

*Marlow v. Office of Court Admin. of the State of New York*,
820 F. Supp. 753 (S.D.N.Y. 1993) ............................................................ 17

*Martinez v. Potter*,
347 F.3d 1208 (10th Cir. 2003) ................................................................ 12

*Matthews v. Euronet Worldwide, Inc.*,
271 Fed.Appx. 770 (10th Cir. 2008) ......................................................... 19

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ............... 11, 12, 13, 14

*Miner v. Mid-America Door Co.*,
2003 OK CIV APP 32, 68 P.3d 212 ........................................................... 25

*Mirzaie v. Smith Congeneration, Inc.*,
1998 OK CIV APP 123, 962 P.2d 678 ....................................................... 25

*Montgomery v. City of Ardmore*,
365 F.3d 926 (10th Cir. 2004) .................................................................. 24

*Munoz v. St. Mary-Corwin Hosp.*,
  221 F.3d 1160 (10th Cir. 2000) ............................................................ 13, 14

*Nachman Corp. v. Pension Benefit Guaranty Corp.*,
  446 U.S. 359 (1980) .................................................................................. 20

*Rand v. CF Indus., Inc.*, 42 F3d 1139 (1994) .................................................. 17

*Robinson v. St. John Med. Ctr., Inc.*,
  645 Fed. Appx. 644 (10th Cir. 2016) (unpublished) ................................. 16

*Smith v. Farmers Coop. Assoc. of Butler*,
  1992 OK 11, 825 P.2d 1323 ...................................................................... 25

*Thompson v. Cendant Corp.*,
  130 F. Supp. 2d 1255 (N.D. Okla. 2001) ................................................... 26

*Wheeler v. Spirit Aerosystems, Inc.*,
  No. 13-CV-0421-CVE-TLW, 2013 WL 5520012 (N.D. Okla. Oct. 1,
  2013) ......................................................................................................... 27

*Zahorsky v. Cmty. Nat'l Bank of Alva*,
  883 P.2d. 198 (Okla. Civ. App. 1994) ....................................................... 25

## Statutes

29 U.S.C. § 623 ................................................................................................ 9

29 U.S.C. § 630(b) ........................................................................................... 9

29 U.S.C. § 1002. ........................................................................................... 21

Okla. Stat. tit. 25, § 1350 .............................................................................. 10

## INTRODUCTION AND FACTUAL BACKGROUND

This is a case which boils down to an employee who simply could not relinquish the idea that she used to own and make decisions for the company she worked for. Betty Wood ("plaintiff") owned and was responsible for day to day operations of Matador Processors, Inc. ("Matador") from 1973 until 2015.[1] Matador was a food processing facility that focused on making chile rellenos and other breaded food products that could be frozen and sold to wholesale food distributors. In Matador's final years of existence it suffered significant financial hardship that eventually led to plaintiff filing for Chapter 11 bankruptcy on behalf of Matador in or around 2013.

Plaintiff's greatest desire was for someone to purchase the business she and her husband created and continue operating it despite its insolvency and the complications associated with coming out of bankruptcy. However, there were no potential buyers who wanted to continue Matador as a going business. Then, in 2015, plaintiff's dreams came true when the defendant, Midwest Performance Pack, Inc. ("MPP"), purchased Matador's assets from Matador's creditor through the Chapter 11 proceeding and chose to continue the business.

Because plaintiff had been in the business for approximately forty (40) years, MPP decided to retain plaintiff both as a sign of appreciation and respect for her many years as the steward of Matador, and also so that she could  impart her knowledge of the industry in a consulting role to the new owners. Rick Jackson ("Jackson"), minority owner of

---

[1]     Plaintiff's husband, Clifton Wood, founded the company with plaintiff and when Mr. Wood passed away in the early 1980's plaintiff remained the sole owner until 2015.

MPP and Director of Sales, hired plaintiff to work in the office, and plaintiff gladly accepted that role. At the time Jackson hired plaintiff, she was Eighty-Five (85) years old.

As the saying goes, no good deed goes unpunished. Unfortunately, once the purchase was finalized, it became apparent that plaintiff was unwilling to let go of "her business." Plaintiff was hyper-critical of every decision MPP made (or did not make) regarding the company. For example, plaintiff criticized MPP's new management for not focusing enough on sales, focusing too much on updating the outdated equipment and other managerial decisions that were beyond the scope of plaintiff's new employment. Put simply, plaintiff could not, or would not, accept the new dynamic and direction of the company for which she was no longer in charge after four decades.

Eventually, Jackson and plaintiff developed an admittedly contentious relationship. Their differences had nothing to do with age. Rather, plaintiff wanted to insert herself in managerial and strategic decisions, and Jackson wanted to make those decisions for MPP without uninvited input. Jackson was also uncomfortable with plaintiff's frequent use of racial slurs including the use of the "N" word, and her habit of openly labeling the Hispanic MPP employees as "the Mexicans," actions that plaintiff continued to engage in despite admonitions from Mr. Jackson to discontinue these hateful and inappropriate comments.

In or around December 2015, Jackson learned that plaintiff had contacted an air-conditioning company and asked them to repossess an air-conditioning unit that had been installed when plaintiff owned Matador. Because MPP purchased all of Matador's assets,

the air-conditioning unit belonged to MPP, and plaintiff did <u>not</u> have the authorization to ask that the unit be repossessed by any third party.

Plaintiff's actions regarding the air-conditioning unit showcased her brazen disregard for the limitations of her new position, and that she would never stop trying to run the business that she no longer owned. Jackson discussed plaintiff's behavior with Chris Allensworth ("Allensworth"), President and majority owner of MPP, and recommended that MPP terminate plaintiff's employment. Allensworth agreed with Jackson's recommendation, and MPP made a business decision that it could no longer afford to tolerate plaintiff's unauthorized meddling, constant criticism and inappropriate behavior. Accordingly, Jackson terminated the plaintiff's employment on December 30, 2015. At the time plaintiff was terminated (approximately eight months after she was hired), she was Eighty-Six (86) years old.

From these facts, plaintiff brings several unfounded causes of action against MPP, including age discrimination and retaliation, violations of the Employee Retirement Income Security Act of 1974, breach of contract and intentional infliction of emotional distress. As will be shown in more detail below, each of plaintiff's causes of action is without merit and should be dismissed as a matter law. Therefore, summary judgment is due on each of plaintiff's claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

### PLAINTIFF'S EMPLOYMENT WITH MPP

1.      The plaintiff (and her husband until his death in the early 1980's) owned Matador Processors, Inc. from approximately 1973 until approximately May, 2015. (Ex. 1, Pl.'s Dep. at 19:15-25; 25:17-21). In May 2015, MPP purchased Matador's assets from Matador's creditor through a Chapter 11 bankruptcy proceeding. (Ex. 1, Pl.'s Dep. at 25:17-25; Ex. 2, Employer's Report on Termination of Business; Ex. 3, Affidavit of Rick Jackson at ¶ 2). MPP did not acquire Matador's debts as a result of the purchase. (Ex. 1, Pl.'s Dep. at 37:15-20; Ex. 3, Affidavit of Rick Jackson at ¶ 2).

2.      Chris Allensworth, President of MPP, and Rick Jackson, Director of Sales and minority owner, decided to hire plaintiff (and other Matador employees) as an employee after the purchase was complete. (Ex. 1, Pl.'s Dep. at 33:16-19; 38:3 – 40:25; Ex. 3, Affidavit of Rick Jackson at ¶ 3). MPP's decision to hire plaintiff was motivated by her forty (40) year experience in manufacturing chili rellenos and the guidance she could presumably provide MPP based on her experience. (Ex. 1, Pl.'s Dep. at 41:7-10; Ex. 3, Affidavit of Rick Jackson at ¶¶ 3 & 5).

3.      Jackson hired plaintiff to work for MPP, and Jackson is the only person plaintiff spoke with regarding MPP's decision to hire plaintiff as an employee. (Ex. 1, Pl.'s Dep. at 32:15-21; 33:16-19; Ex. 3, Affidavit of Rick Jackson at ¶ 4). At the time she

---

[2]      In keeping with the standard on summary judgment, the undisputed facts are stated in the light most favorable to the plaintiff. As such, they are admitted solely for the purposes of summary judgment. Should trial on this matter be necessary, MPP reserves the right to categorically dispute the facts as stated.

was hired by MPP in May, 2015, Plaintiff was eighty-five (85) years old and Jackson was fifty-seven (57) years old. (Ex. 1, Pl.'s Dep. at 6:13-23; Ex. 3, Affidavit of Rick Jackson at ¶ 4).

4.     As an employee of MPP, plaintiff did not have any management or decision-making authority, and she was not authorized to make decisions relating to sales, vendors, creditors, strategic decisions, the purchase of machinery or any other management decisions. (Ex. 1, Pl.'s Dep. at 43:14 – 44:1-6; Ex. 3, Affidavit of Rick Jackson at ¶ 5). Plaintiff's job duties included general office duties on an as-needed basis, laundering employee aprons and running company errands. (Ex. 1, Pl.'s Dep. at 40:1-12; 42:2 – 43:2; Ex. 4, Pl.'s Resp. to Interrog. No. 8; Ex. 3, Affidavit of Rick Jackson at ¶ 5).

## PLAINTIFF'S TERMINATION

5.     After plaintiff began working for MPP, Jackson and plaintiff's relationship developed tension, and a cordial relationship was untenable. (Ex. 1, Pl.'s Dep. at 98:13 – 16). Specifically, Plaintiff began complaining about the way that the new owners were running the company. (Ex. 1, Pl.'s Dep. at 131:22 – 132:4; Ex. 3, Affidavit of Rick Jackson at ¶ 7). Jackson felt like plaintiff was still trying to run the company and was unhappy with every decision that MPP made in the management of the business. (Ex. 3, Affidavit of Rick Jackson at ¶ 7). Plaintiff thought that Jackson was rude because he was allegedly not dependable, did not listen to her and did not "discuss anything" with her. (Ex. 1, Pl.'s Dep. at 46:3-16; 99:23 – 102:1).

6.     During plaintiff's employment with MPP, Jackson heard plaintiff use racially derogatory remarks, which MPP prohibits by both policy and practice. (Ex. 1,

Pl.'s Dep. at 72:1 – 73:1; Ex. 3, Affidavit of Rick Jackson at ¶ 8; Ex. 5, Harassment Policy). Plaintiff admits that she used the term "head nigger in charge" ("HNIC") while she owned Matador, but she has no recollection of using the term after MPP purchased Matador because she had "no reason" to use the term anymore "in that context." (Ex. 1, Pl.'s Dep. at 76:1 – 78:15). Plaintiff also admits that she used the term "the Mexicans" to refer to Hispanic employees. (Ex. 1, Pl.'s Dep. at 117:3-12).

7.     In or around fall, 2015, while plaintiff was working for MPP, plaintiff admits that she contacted an air conditioning company and asked them to repossess the company's air-conditioning unit. (Ex. 6, Memorandum from Betty Wood to "Duck Specialist"; Ex. 1, Pl.'s Dep. at 65:12 – 68:1). Plaintiff admits that she did not have MPP's permission to ask the air-conditioning company to repossess MPP's air-conditioning unit. (Ex. 1, Pl.'s Dep. at 69:15 – 71:22). The air-conditioning unit belonged to MPP, and MPP did not want the air-conditioning unit to be repossessed and plaintiff did not have the authority or permission to ask for it to be repossessed. (Ex. 3, Affidavit of Rick Jackson at ¶ 9).

8.     In December, 2015, Jackson learned that plaintiff was speaking negatively about MPP to the air-conditioning company (*See e.g.,* Ex. 6, Memorandum from Betty Wood to "Duck Specialist", "the new owners refuse to take care of this small balance. . . . "; Ex. 3, Affidavit of Rick Jackson at ¶ 9). Jackson also learned that plaintiff had asked the air-conditioning company to repossess the unit. (Ex. 3, Affidavit of Rick Jackson at ¶ 9). Jackson decided that MPP could no longer tolerate plaintiff's indifference to the limitations of her new position as well as her racially derogatory and insubordinate

6

behavior, and plaintiff should therefore be terminated. Jackson spoke with Allensworth about terminating plaintiff's employment, and Allensworth approved Jackson's recommendation for plaintiff's termination. (Ex. 3, Affidavit of Rick Jackson at ¶ 10). On or around December 30, 2015, Jackson terminated plaintiff's employment. (Ex. 1, Pl.'s Dep. at 52:12-14; Ex. 3, Affidavit of Rick Jackson at ¶ 11).

### PLAINTIFF'S CLAIM OF AGE DISCRIMINATION AND RETALIATION

9.     Throughout plaintiff's employment with MPP from May 2015 through December 30, 2015, MPP always employed less than twenty (20) employees. (Ex. 1, Pl.'s Dep. 25:17-25; Ex. 7, Affidavit of Jalie "Jodi" Lankford at ¶ 2).

10.     Plaintiff's allegations of age discrimination relate only to the alleged conduct of Jackson. (Ex. 1, Pl.'s Dep. at 44:18-24). Plaintiff alleges that her age was "mentioned several times" by Jackson but admits that she is unable to recall <u>any</u> specific details or context regarding <u>any</u> alleged age-based comments. (Ex. 1, Pl.'s Dep. at 45:17 – 46:2). Plaintiff felt  Jackson was rude, did not listen to her and did not discuss anything with her because she was older, but plaintiff's own self-serving belief that Jackson's rudeness and not listening to her is somehow connected to her age is the sole evidentiary basis she has in support of her age discrimination claim. (Ex. 1, Pl.'s Dep. at 46:3 – 48:4).

11.     Plaintiff's allegation that her termination was discriminatory is based on MPP's decision to hire Jalie "Jodi" Lankford ("Lankford") on or around December 14, 2015 when Lankford was fifty-eight (58) years old. (Ex. 1, Pl.'s Dep. at 48:11 – 49:7; Ex. 7, Affidavit of Jodi Lankford at ¶ 1). Plaintiff admits that Lankford was hired to do accounting and bookkeeping work, and Plaintiff never performed accounting and

bookkeeping work for either MPP or Matador. (Ex. 1, Pl.'s Dep. 39:14-16; 49:8-13. Ex. 8, Pl.'s Resp. to Interrog. No. 4).

12.  In her charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), plaintiff did <u>not</u> make any allegations of retaliation. (Ex. 9, Pl.'s Charge of Discrimination). Further, Plaintiff admits that she never made any formal or informal complaints about discrimination or retaliation while she was employed with MPP (Ex. 1, Pl.'s Dep. at 74:6-22).

## PLAINTIFF'S ERISA CLAIM

13.  MPP does not now – nor has it ever – offered a retirement program to any employees, including plaintiff. Plaintiff admits that she was not offered a retirement program at any time before or during her employment with MPP. (Ex. 1, Pl.'s Dep. at 57:1 – 58:18; Ex. 10, Pl.'s Resp. to Interrog. No. 12; Ex. 3, Affidavit of Rick Jackson at ¶ 6).

## PLAINTIFF'S BREACH OF CONTRACT CLAIM

14.  MPP did not make any promises prior to or during plaintiff's employment regarding the duration of plaintiff's employment. (Ex. 1, Pl.'s Dep. at 132:14 – 139:24; Ex. 3, Affidavit of Rick Jackson at ¶ 6). Plaintiff admits that she was an at-will employee, and MPP did not offer plaintiff an employment contract. (Ex. 1, Pl.'s Dep. at 38:15-20; 132:5 – 133:13).

## PLAINTIFF'S CLAIM
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

15.   Plaintiff claims that her termination has caused her to experience disappointment and lack of sleep. (Ex. 1, Pl.'s Dep. at 106:1-24; 108:22 – 109:8). Plaintiff has not sought medical or psychiatric assistance to address her alleged disappointment and lack of sleep. (Ex. 1, Pl.'s Dep. at 108:4-21). MPP's act of terminating her employment is the only basis on which plaintiff claims MPP acted in an extreme and outrageous manner. (Ex. 1, Pl.'s Dep. at 107:17-24).

## ARGUMENT AND AUTHORITY

## I.   MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ADEA CLAIMS BECAUSE MPP HAS EMPLOYED LESS THAN TWENTY EMPLOYEES AT ALL TIMES RELEVANT TO PLAINTIFF'S ALLEGATIONS.

The ADEA prohibits employers from engaging in discriminatory employment practices "because of" an employee's age. 29 U.S.C. § 623. However, the ADEA only applies to employers who employ at least twenty (20) employees. 29 U.S.C. § 630(b). ("The term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year.").

During plaintiff's employment, and at the time of her termination, MPP did not employ more than fifteen (15) people at any given time, thus falling short of the jurisdictional prerequisite. (UMF 9). Therefore, plaintiff's ADEA claim fails as a matter of law, and should be disposed of on summary judgment on this basis alone.

II. **MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM BECAUSE PLAINTIFF DID NOT ENGAGE IN PROTECTED OPPOSITION TO DISCRIMINATION, AND SHE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.**

Although plaintiff's ADEA claim fails as a matter of law, plaintiff's state-law claims of retaliation and age discrimination survive because jurisdiction under the OADA is not predicated on the number of employees. *See* Okla. Stat. tit. 25, § 1350. However, for Plaintiff's OADA claims, MPP may assert "any defense available to it under the ADEA or Title VII." *Bennett v. Windstream Comm., Inc.*, 30 F. Supp. 3d 1243, 1259 (N.D. Okla. 2014) (citing Okla. Stat. tit. 25, § 1350(F)). Additionally, the plaintiff's OADA claims fail if her federal claims would fail. *Id.*

In her amended complaint, plaintiff alleges that "[t]he actions of the Defendant in termination [sic] the Plaintiff and in denying her an open position constitutes age discrimination and retaliation for complaining of age discrimination." (ECF Dkt. 13 at 3 ¶ 16). However, this conclusory allegation is insufficient for plaintiff to meet her burden of proving that MPP retaliated against her. In fact, plaintiff admits that she did not ever make a report of discrimination, and she does not allege any other facts that would show she ever engaged in protected opposition to discrimination. (UMF 12). Therefore, her retaliation claim must fail.

In addition to being factually insufficient as a matter of law, plaintiff's retaliation claim also fails because she did not exhaust her administrative remedies. Plaintiff filed a charge of discrimination with the EEOC, but plaintiff did <u>not</u> make any allegations of retaliation, and did not allege any facts to infer that the basis of her claim was retaliation.

10

Plaintiff's retaliation claim appeared for the first time in her complaint against MPP, and plaintiff is unable to show that she administratively exhausted her claim. (UMF 12). Thus, MPP is entitled to summary judgment on this claim.

### A. Plaintiff did not engage in protected opposition to discrimination, and therefore, plaintiff's OADA claim for retaliation fails as a matter of law.

In the case at bar, plaintiff's retaliation claim fails as a matter of law because she did not engage in protected opposition to discrimination. The ADEA prohibits retaliation against an employee who "has opposed any practice made unlawful" by the statute. *Hinds v. Sprint United Mgmt. Co.*, 523 F.3d 1187, 1201 (10th Cir. 2008) (citing 29 U.S.C, § 623(d)). Where the plaintiff lacks direct evidence of retaliation, the familiar *McDonnell Douglas* burden-shifting standard applies. *Hinds*, 523 F.3d at 1201. In the first step, the employee must establish her *prima facie* case of retaliation by showing that "(1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, <u>and</u> (3) a causal connection existed between the protected activity and the materially adverse action." *Id.* at 1202.

Plaintiff alleges that MPP retaliated against her for "complaining of age discrimination." (Dkt. 13 at 3 ¶ 16). However, plaintiff cannot show that she engaged in protected opposition to discrimination under the first element of her *prima facie* case. Plaintiff admits that she never made an informal or formal report to any person regarding any alleged discriminatory conduct while she was employed with MPP. (UMF 12). Further, plaintiff has not identified even one instance where she allegedly engaged in

protected opposition to discrimination prior to her termination. (*See* Ex. 11, Pl.'s Resp. to Interrog. No. 3). In fact, plaintiff's first report of alleged discriminatory treatment occurred when she filed her charge of discrimination with the EEOC – ***after her termination***. (UMF 12).

Plaintiff's own description of the alleged retaliation she experienced is that she was "ushered out the door without warning." (Ex.12, Pl.'s Resp. to Interrog. No. 5). Termination without warning is <u>not</u> relevant to a retaliation claim, and it fails to show that plaintiff engaged in opposition to discrimination – which she did <u>not</u>. Therefore, the *McDonnell Douglas* analysis ends at the first stage because plaintiff cannot prove the first element to her *prima facie* case. *See Hinds*, 523 F.3d at 1201-02 (noting that the analysis begins and ends at the first step where plaintiff cannot establish her *prima facie* case).

**B.  Plaintiff failed to exhaust her administrative remedies for her retaliation claim.**

Plaintiff also failed to exhaust her administrative remedies relating to her retaliation claim. Plaintiff raised her retaliation claim for the very first time when she filed this lawsuit. (UMF 12). (*See also* Ex. 1, Pl.'s Dep. at 123:10 – 125:3). Plaintiff did not claim or allege facts sufficient to show that she was retaliated against in her charge of discrimination filed with the EEOC (UMF 12), which is fatal to her claim. *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) ("[T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies

must be exhausted.") (internal citations omitted). Because plaintiff failed to bring a claim of retaliation to the EEOC, she did not exhaust her administrative remedies for her retaliation claim, and therefore it fails as a matter of law.[3]

### III. MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF AGE DISCRIMINATION BECAUSE THE UNDISPUTED EVIDENCE PROVES THAT AGE WAS NOT THE DETERMINING FACTOR IN THE DECISION TO TERMINATE PLAINTIFF'S EMPLOYMENT.

Absent direct evidence of discrimination,[4] courts analyze age discrimination claims under the three-step framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1165 (10th Cir. 2000). A plaintiff relying on *McDonnell Douglas* bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *See Munoz,* 221 F.3d at 1165. A plaintiff in an age discrimination suit may establish a *prima facie* case of wrongful termination by showing that (1) she belongs to a protected class;  (2) she was qualified for her job;  (3) despite her qualifications, she was discharged;  and (4) that she was replaced by a younger person. *See Id.*

If the plaintiff establishes her *prima facie* case, a rebuttable presumption arises that the defendant unlawfully discriminated against her. *Id.* The defendant must then articulate a legitimate, nondiscriminatory reason for the adverse employment action

---

[3]    Even if the court finds that plaintiff exhausted her administrative remedies and satisfied her *prima facie* case of retaliation, plaintiff's retaliation claim still fails because she cannot prove that MPP's reason for termination is pretextual, as explained in Section III below.

[4]    The record in the instant case is devoid of any direct evidence (or even allegations of the existence of such evidence) of unlawful discrimination.

suffered by the plaintiff. *Id.* If the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment only if she is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual. *Id.*

### A.   MPP has satisfied its stage two burden by stating its legitimate, non-discriminatory reason for firing the plaintiff.

For purposes of this Motion *only*, MPP concedes that the plaintiff can satisfy the elements of her *prima facie* case of age discrimination. Therefore, under *McDonnell Douglas*, the burden shifts to MPP to articulate a "legitimate, nondiscriminatory reason" for its decision to discharge the plaintiff. *See Munoz*, 221 F.3d at 1165. The evidentiary record includes ample evidence substantiating MPP's legitimate, non-discriminatory reason for taking an adverse employment action against the plaintiff. Specifically, MPP's business decision to terminate the plaintiff was based on plaintiff's own outrageous racial insensitivity and her unabated habit of acting outside her authority and without authorization, either one of which was more than sufficient to justify plaintiff's termination. (UMFs 6 & 7).

Jackson and plaintiff did not have a cordial relationship once plaintiff became an employee of MPP. (UMF 5). Plaintiff felt like Jackson was rude to her, and Jackson alleges that plaintiff consistently complained about the way MPP conducted business, and she wanted to be "in charge." (UMF 5). Additionally, Jackson witnessed plaintiff use derogatory language about African Americans and Hispanics throughout her employment. Indeed, plaintiff admits that she has referred to herself as the "***head nigger in charge***" in the past and referred to Hispanic workers as "the Mexicans." (UMF 6).

14

After plaintiff's termination, MPP also found a file on plaintiff's computer that was entitled "HNIC," which plaintiff admits means "head nigger in charge." (Ex. 1, Pl.'s Dep. at 76:12-16; Ex. 13, Screen Shot of Plaintiff's Computer). This type of racially derogatory language is not acceptable behavior for employees at MPP, as such conduct is prohibited by both policy and practice. (Ex. 3, Affidavit of Rick Jackson at ¶ 8).

Plaintiff denies that she installed the "HNIC" folder on her computer and denies that she was ever reprimanded for using racially derogatory language. However, plaintiff's denial is immaterial to the outcome of this Motion because she admittedly committed another act that independently supports her termination as legitimate, non-discriminatory and non-retaliatory. Indeed, the proverbial "last straw" that resulted in plaintiff's termination occurred when she asked a vendor to repossess MPP's equipment when she had no authorization to do so. (UMF 7 & 8).

When plaintiff owned Matador – and Matador was financially struggling – plaintiff arranged for an air-conditioning unit to be installed at Matador. (Ex. 1, Pl.'s Dep. at 66:13-22). Plaintiff purchased the air-conditioner on credit and agreed to pay for the unit as funds became available. (Ex. 1, Pl.'s Dep. at 68:24 – 69:7). Because plaintiff personally promised to pay for the unit, she felt responsible for paying for the full value of the unit despite the fact that she had filed bankruptcy. (Ex. 1, Pl.'s Dep. at 68:2 – 69:14). After MPP purchased Matador's assets (but did not acquire Matador's debts) (UMF 1), plaintiff continued to make personal payments for the air conditioner. (Ex. 1, Pl.'s Dep. at 69:5-14).

Plaintiff admits that she asked the vendor to repossess the air conditioner. (UMF 7). Notably, plaintiff also admits that she had no authorization to ask for the repossession of the air-conditioning unit. (UMF 7). Plaintiff further admits that her job duties were limited to office duties, and she was not authorized to make decisions relating to sales, vendors, creditors, strategic decisions, the purchase of inventory or any other management decision. (UMF 4). Acting outside the scope of her position is a legitimate reason for termination. *See Robinson v. St. John Med. Ctr., Inc.*, 645 Fed. Appx. 644, 648-49 (10th Cir. 2016) (unpublished) (holding that termination based on plaintiff acting outside the scope of her job position was a legitimate reason for termination). Therefore, MPP's facially legitimate and non-discriminatory reason for the plaintiff's discharge satisfies MPP's stage-two burden of production.

### B. There is no evidence that MPP's stated reason for termination was pretext for discrimination.

MPP is entitled to summary judgment because there is not a scintilla of evidence that its actions toward the plaintiff were pretextual. The plaintiff's belief that her age was a factor in MPP's decision making is irrelevant. "Evidence, not contentions, avoids summary judgment." *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1036 (8th Cir. 2005).

MPP hired plaintiff when she would not otherwise have had a job at all because no other buyers wanted to purchase Matador as a going business. (Ex. 1, Pl.'s Dep. at 31:7 – 32:3). All other potential buyers wanted to liquidate the assets and discontinue the business. (Ex. 1, Pl.'s Dep. at 31:7 – 32:3). It is undisputed that Jackson and Allensworth

16

made the decision to hire the plaintiff, and Jackson ultimately did hire the plaintiff. (UMFs 2 & 3). It is also undisputed that the person who terminated the plaintiff (Jackson) was in the protected age category at the time of the plaintiff's termination. (UMFs 3 & 8). These facts alone create an inference of non-discrimination. *See e.g., Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) ("[W]here the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee is not pretextual."); *Marlow v. Office of Court Admin. of the State of New York*, 820 F. Supp. 753, 757 (S.D.N.Y. 1993), *aff'd* 22 F.3d 1091 (2d Cir. 1994) (noting where the plaintiff and some of the decision-makers were over the age of 40, "claims of discrimination become less plausible.").

Here, it is unbelievable to suggest that Jackson – who took part in the decision to hire plaintiff – would suddenly develop an aversion to plaintiff's age and terminate her on that basis. *See Coghlan v. Am. Seafoods Co., L.L.C.*, 413 F.3d 1090, 1097 (9th Cir. 2005) (internal citation and quotation omitted). ("[T]he point of the same-actor inference is that the evidence *rarely* is sufficient . . . to find that the employer's asserted justification is false when the actor who allegedly discriminated against the plaintiff had previously shown a willingness to treat the plaintiff favorably."). Indeed, the decisions to hire plaintiff and terminate her both occurred within eight (8) months of each other. (UMFs 3 & 8). This short time period raises a further inference that the decision to terminate plaintiff was not discriminatory. *See Rand v. CF Indus., Inc.*, 42 F.3d 1139 (1994) ("It seems rather suspect to claim that the company that hired [the plaintiff] at age 47 'had

suddenly developed an aversion to older people' two years later") (quoting *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992).

In her attempt to show pretext, plaintiff alleges that Jackson made comments about plaintiff's age, and plaintiff was replaced by a younger woman. Specifically, plaintiff alleges that Jackson "mentioned" her age "several times." (UMF 10). However, plaintiff is unable to provide any specific details regarding Jackson's alleged age-based comments, and she is unable to provide any facts to link these alleged comments to her termination. (UMF 10). Plaintiff further alleges that Jackson was rude to her, did not listen to her and did not discuss anything with her. (UMFs 5 & 10). Again, however, plaintiff cannot produce any evidence linking Jackson's alleged behavior to plaintiff's age. In fact, plaintiff admits that she cannot prove that Jackson's alleged behavior toward her was based on age. (Ex. 1, Pl.'s Dep. at 45:5-12).

Plaintiff simply cannot show that Jackson's alleged comments and behavior constitute discrimination or that MPP's proffered reasons for termination are pretext for discrimination. "Mere conjecture and subjective beliefs about an employer's motive do not create a genuine issue of material fact." *Edwards v. Creoks Mental Health Servs., Inc.*, 505 F. Supp. 2d 1080, 1091 (N.D. Okla. 2007) (internal citations omitted). But mere conjecture is all the plaintiff can offer in support of her claim. Therefore, her claim fails as a matter of law.

Plaintiff's allegation that she was replaced by a younger woman (Lankford, who was 58 years old at the time plaintiff was terminated) is similarly without merit. Plaintiff now alleges that Lankford took over some of plaintiff's duties and surmises that it is

18

evidence of discrimination, even though plaintiff did not make this allegation in her sworn responses to MPP's interrogatories. (Ex. 1, Pl.'s Dep. at 50:3 – 51:25; Ex. 8, Pl.'s Resp. to Interrog. No. 4). Regardless, however, Plaintiff is unable to provide any evidence to support that MPP's decision to hire Lankford was based on plaintiff's age.

Ultimately, the plaintiff is left with nothing but the fact that Lankford was hired, and she was younger than the plaintiff. (UMF 11). Even if Lankford was plaintiff's replacement – which she was not – standing alone, this is wholly insufficient to establish pretext. *See e.g. Matthews v. Euronet Worldwide, Inc.*, 271 Fed.Appx. 770, 776 (10th Cir. 2008) (holding that the fact that the plaintiff was replaced with someone outside of the protected category is not evidence of pretext **without "overwhelming" evidence of a disparity between the qualifications of the plaintiff and his replacement**) (emphasis added). Here, the plaintiff does not dispute the Lankford's qualifications. Indeed, plaintiff admits that Lankford was hired as an accountant/bookkeeper, and plaintiff never performed accounting or bookkeeping work for either MPP or Matador. (UMF 11).

The undeniable fact is MPP made the business decision that it could no longer afford to employ the plaintiff where her conduct was exposing MPP to liability (racially derogatory remarks), and plaintiff was deliberately trying to influence a vendor to wrongfully take away MPP's property. (UMFs 6, 7 and 8). As demonstrated *supra*, the decision to terminate plaintiff was deliberate, justified and not influenced by discriminatory animus towards the plaintiff. The plaintiff's termination was strictly a business decision and had absolutely nothing to do with the plaintiff's age.

In sum, there is no evidence upon which a reasonable juror could believe that MPP's reasons for terminating plaintiff are pretextual. Moreover, it is beyond the bounds of logic and reason to believe, in light of the weakness of the plaintiff's evidence and the inferences of non-discrimination afforded MPP, that a reasonable juror could conclude that Jackson, after hiring the plaintiff approximately eight (8) months earlier when she was eighty-five (85) years old, developed a sudden animus to the plaintiff's age and terminated her on that basis when she was eighty-six (86) years old.

Therefore, because there is no evidence from which a reasonable jury could find that the plaintiff was fired because of her age, MPP is entitled to summary judgment.

## IV.   MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ERISA CLAIMS BECAUSE THE UNDISPUTED EVIDENCE SHOWS THAT MPP DID NOT HAVE A RETIREMENT PROGRAM IN WHICH PLAINTIFF COULD HAVE A VESTED INTEREST.

Plaintiff alleges that her termination was motivated, in part, to prevent her from vesting in MPP's retirement program. Plaintiff's claim is alleged to be based on the Employee Retirement Income Security Act of 1974, 28 U.S.C. § 1001 *et seq.* ("ERISA"). However, plaintiff's allegation is vexatious and without merit.

ERISA was enacted to "ensure employees [would] not be left empty-handed once employers have guaranteed them certain benefits." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). However, "[n]othing in ERISA requires an employer to establish employee benefits plans." *Id.* Rather, the goal is to provide protections "**if** a worker has been promised a defined pension benefit upon retirement." *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375 (1980) (emphasis added). Accordingly, a

prerequisite to an ERISA claim is the actual existence of benefit plan, pension plan or similar program that the employer maintains for the benefit of its employees. *See* 29 U.S.C. § 1002 *et seq.*

Plaintiff's ERISA claim fails as matter of law because MPP does not now, nor has it ever maintained a pension, retirement or other benefit program for the benefit of its employees. (UMF 13). Plaintiff admits that she was <u>not</u> offered a retirement program at any time before or during her employment with MPP. (UMF 13) (Ex. 1, Pl.'s Dep. at 61:22 – 62:1) (*"**Q: Well, let me break it down, perhaps, in a little bit more simple fashion then. We agree that you had no benefits that were going to vest at MPP, correct? A: Yes."***). Therefore, it is impossible for plaintiff's termination to have been motivated by MPP's desire to prevent plaintiff from vesting in a non-existent retirement program. Indeed, it is curious that this claim was not voluntarily dismissed after the conclusion of the plaintiff's deposition when it is so readily apparent that this claim lacks any substance whatsoever.

Because there was no retirement program in place, and MPP was not required to establish a retirement program, plaintiff's ERISA claim fails as a matter of law.

**V.     MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM BECAUSE THE UNDISPUTED EVIDENCE SHOWS THAT PLAINTIFF WAS AN AT-WILL EMPLOYEE WITH NO EXPECTATION THAT SHE HAD CONTRACTUAL RIGHTS TO CONTINUED EMPLOYMENT.**

Oklahoma is an "employment-at-will" state. *Burk v. K-Mart Corp.*, 770 P.2d 24, 26 (Okla. 1989). "In the absence of an express or implied agreement to the contrary between an Oklahoma employer and its employees, the employer may terminate an

employee at any time 'for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong.'" *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1461 (10th Cir. 1997) (quoting *Burk*, 770 P.2d at 26).

Here, plaintiff alleges the existence of both an express and implied contract and alleges that she and MPP entered an agreement that provided that plaintiff could work for MPP until she chose to voluntarily retire. (ECF Dkt. 13, at 4 ¶ 24; ECF Dkt. 8 at 2). However, the evidence proves that plaintiff and MPP did not enter into an express or implied contract, and therefore, plaintiff's breach of contract claim fails as a matter of law.

Despite the existence of her breach of contract claim, plaintiff refutes the allegations in her own complaint by admitting that there was no contract or promise made before or during her employment governing the terms and conditions of her employment. (UMF 14). The only potential basis for plaintiff's claim that she was guaranteed to remain employed as long as she wanted is alleged comments made <u>after</u> plaintiff was already terminated:

> Q:   And did anybody say that there was a guaranteed number of years that you would remain employed?
>
> A:   Until I wanted to. They said that I could work until I wanted to quit.
>
> Q:   Who said that?
>
> A:   Chris [Allensworth].
>
> ***
>
> Q:   And that promise that you allege was made by Mr. Allensworth was never reduced to writing, correct? No Contract? No Agreement? . . . [S]o it was never said to you prior to your termination?

A:      No.

(Ex. 1, Pl.'s Dep. at 132:19 – 133:12). Thus, because there was not a contract preventing

MPP from terminating plaintiff's employment, MPP could not have breached a contract

by terminating her. The case law is clear: "Where an employment contract is of indefinite

duration, it is terminable at will by either party." *Hayes v. Eateries, Inc.*, 905 P.2d 778,

781-82 (Okla. 1995).

Although Oklahoma law recognizes the existence of an implied contract of

employment, plaintiff's own admission that she considered herself an at-will employee

eviscerates any argument that there was a meeting of the minds that is required to form a

contract of employment. Additionally, there are no other factors present that would

warrant an inference that an implied contract of employment existed. *See Hinson v.

Cameron*, 1987 OK 49, 742 P.2d 549, 554–55 ("Factors which have been isolated as

critical to evaluate whether an implied contract right to job security exists are: (a)

evidence of some "separate consideration" beyond the employee's services to support the

implied term, (b) longevity of employment, (c) employer handbooks and  policy manuals,

(d) detrimental reliance on oral assurances, pre-employment interviews, company policy

and past practices and (e) promotions and commendations.").

The record is simply devoid of any evidence that would suggest that plaintiff was

contractually entitled to continued employment unless and until she voluntarily decided

to quit. Coupled with plaintiff's admission that she was an at-will employee, the lack of

evidence to the contrary proves that plaintiff "lacks any claim cognizable under

Oklahoma law." *See Black*, 107 F.3d at 1461.

**VI.    MPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM BECAUSE MPP DID NOT ENGAGE IN EXTREME AND OUTRAGEOUS CONDUCT AND PLAINTIFF DID NOT SUFFER SEVERE EMOTIONAL DISTRESS.**

The undisputed evidence demonstrates plaintiff cannot meet the extremely high threshold applied to intentional infliction of emotional distress ("IIED") claims in the employer-employee context.   "To [state a claim] for intentional infliction of emotional distress, [the] plaintiff must [allege facts, that if true, establish]: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Publ'ns, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 735. "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Montgomery v. City of Ardmore*, 365 F.3d 926, 942 (10th Cir. 2004).

The linchpin to any IIED claim is extreme and outrageous conduct. Plaintiff does not make any specific factual allegations detailing any alleged extreme and outrageous conduct during her employment with MPP. Rather, plaintiff's IIED claim is based on MPP's decision to terminate her employment. (UMF 15). MPP does not dispute that it terminated plaintiff's employment – however, MPP strenuously disputes plaintiff's termination was based on any wrongful or unlawful purpose, including plaintiff's age. Nevertheless, MPP's treatment of plaintiff during her employment and at the time of her termination cannot be viewed as extreme and outrageous. The undisputed facts prove that

MPP did not discriminate or retaliate against plaintiff, did not violate her rights under ERISA (because MPP does not have a retirement plan to which ERISA would apply), and did not breach an employment contract with plaintiff (the existence of which is denied). (UMFs 7, 8, 9, 10, 11, 12, 13 and 14).

Moreover, Oklahoma appellate courts have "consistently found employment related facts . . . do not meet the . . . criteria [for outrageous conduct]," as a matter of law. *Miner v. Mid-America Door Co.*, 2003 OK CIV APP 32, ¶ 42, 68 P.3d 212, 223; *see also Eddy v. Brown*, 1986 OK 3, 715 P.2d 74 (no outrageous conduct where supervisor and foreman ridiculed plaintiff in the workplace); *Anderson v. Okla. Temporary Servs., Inc.*, 1996 OK CIV APP 90, 925 P.2d 574 (no outrageous conduct where plaintiff alleged six events over a two year period including a supervisor making lewd remarks about the plaintiff and embarrassing her in front of co-workers); *Mirzaie v. Smith Congeneration, Inc.*, 1998 OK CIV APP 123, 962 P.2d 678 (no outrageous conduct where evidence included employer calling the plaintiff in the middle of the night, berating the plaintiff for hours, mandating unnecessary work, and making derogatory sexual comments about the plaintiff's fiancée); *Smith v. Farmers Coop. Assoc. of Butler*, 1992 OK 11, 825 P.2d 1323 (the distress an employee suffered following termination was not sufficiently extreme or outrageous); *Zahorsky v. Cmty. Nat'l Bank of Alva*, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct); *Bradley v. Okla. Med. Research Found.*, No. CIV-12-339-M, 2013 WL 791228, at *2 (W.D. Okla. March 4, 2013) (no

outrageous conduct where supervisor demanded employee divorce her husband, offered to pay for the divorce, promised a raise if she got the divorce, and suggested her husband should commit suicide).

This legal analysis is confined to the narrow time period surrounding the alleged wrongful acts, and cannot include or be colored by unrelated events that have no relation to whether the employer's conduct is extreme and outrageous. *See Haynes & Boone, LLP v. Chason*, 81 S.W.3d 307, 311 (Tex. App. 2001) (stating a plaintiff's level of distress following the defendant's conduct is not a factor in considering whether the conduct is extreme and outrageous).

More importantly, Oklahoma courts have not hesitated to dismiss claims for IIED based on allegations similar to Plaintiff's claims. Oklahoma courts routinely find that allegations of discrimination and/or wrongful termination are insufficient to establish the necessary "outrageous conduct." *See Fifer v. City of Tulsa*, 12-CV-0408-CVE-FHM, 2012 WL 4758127, at *3 (N.D. Okla. Oct. 5, 2012) (granting the defendant's motion to dismiss and noting that **"[p]laintiff's allegations that defendant discriminated against him by treating him differently based on his disability, placing him on administrative leave without pay for the entirety of the year 2010, requiring him to make monthly visits to City Medical during the year 2010, and thereafter terminating his employment, <u>do</u> <u>not</u> constitute extreme and outrageous conduct"**) (emphasis added); *Thompson v. Cendant Corp.*, 130 F. Supp. 2d 1255, 1263 (N.D. Okla. 2001) ("[Employer's] conduct in terminating [the employee], even in light of her disability and age, cannot be regarding as so extreme and outrageous that it goes beyond

26

the bounds of common decency and is utterly intolerable in civilized society."); *Garner-Hon v. St. John Health Sys., Inc.*, No. 09-CV-0277-CVE-FHM, 2010 WL 830611 at * 9 (N.D. Okla. Mar. 2, 2010) (holding that terminating plaintiff for even minor misconduct is permissible and does not constitute extreme and outrageous conduct because the employer did not "intentionally and persistently" engaged in a course of conduct that harmed the plaintiff); *Janzen v. Watonga Hosp. Trust Auth.*, No. CIV-11-70-D, 2012 WL 3921524, at *6-7 (W.D. Okla. Sept. 7, 2012) (**stating the plaintiff's allegations that she was terminated and discriminated against were insufficient to demonstrate extreme and outrageous conduct**); *Wheeler v. Spirit Aerosystems, Inc.*, No. 13-CV-0421-CVE-TLW, 2013 WL 5520012, at *6 (N.D. Okla. Oct. 1, 2013) (**finding that allegations of harassment based on a disability and other protected classes, coupled with far more egregious conduct, were insufficient to establish a claim for IIED in the workplace setting**); *Lacher v. Bd. of Cnty. Comm'r for Okla. Cnty.*, No. CIV-11-1038-M, 2013 WL 268983, at *7 (W.D. Okla. Jan. 24, 2013) (**finding that allegations of unlawful conduct (disability and age discrimination) do not rise to the level of actionable conduct required for an IIED claim**).

Plaintiff can only prevail on her IIED claim if she proves that MPP engaged in extreme and outrageous conduct that caused her to suffer severe emotional distress.[5] Plaintiff has not satisfied her burden because her claim is not supported by a full and fair

---

[5]    Plaintiff also lacks evidence to demonstrate she suffered extreme emotional distress as a result of his termination. The undisputed facts demonstrate that plaintiff has suffered disappointment and lack of sleep because she is no longer employed by MPP. (UMF 15). Plaintiff has not sought medical or psychiatric treatment, and she does not take any medications to address her disappointment and lack of sleep. (UMF 15).

review of the facts or legal precedent in Oklahoma. Oklahoma courts have steadfastly defended against this type of free-for-all litigation in the employer-employee context. This Court should do the same.

## CONCLUSION

The undisputed facts of this case prove MPP is entitled to summary judgment on all of plaintiff's causes of action as a matter of law. MPP therefore respectfully requests summary dismissal of all of plaintiff's claims.

Respectfully submitted,

*s/ Melissa R. McDuffey*
Adam W. Childers, OBA #18673
Melissa R. McDuffey, OBA #32463
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
adam.childers@crowedunlevy.com
melissa.mcduffey@crowedunlevy.com
ATTORNEY FOR DEFENDANT
MIDWEST PERFORMANCE PACK f/k/a
MATADOR PROCESSORS, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of May, 2017, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Mr. E. Ed Bonzie
E. Ed Bonzie, P.C.
8201 S. Walker
Oklahoma City, OK  73139
ebonzie@sbcglobal.net

ATTORNEY FOR CLAIMANT
BETTY WOOD

*s/  Melissa R. McDuffey*
Melissa R. McDuffey