# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

BETTY WOOD, )
)
    Plaintiff, )
)
v. ) Case No. CIV-16-785-D
)
MIDWEST PERFORMANCE )
PACK, INC., f/k/a MATADOR )
PROCESSORS, INC., )
)
    Defendant. )

## ORDER

Plaintiff Betty Wood and her husband founded Matador, Inc. in 1973. Matador was a food processing facility that focused on making chile rellenos and other breaded food products that could be frozen and sold to wholesale food distributors. In 2015, after experiencing financial difficulty and bankruptcy, Matador was purchased by Defendant Midwest Performance Pack, Inc. After the purchase was completed, Defendant retained all Matador employees including Plaintiff, who it retained as a consultant. This lawsuit arises from the subsequent breakdown in the parties' relationship.

Plaintiff alleges she was singled out for unequal treatment and harassment by her supervisor. Plaintiff contends she complained of such treatment, but was disparaged and eventually retaliated against by way of termination for her actions. She asserts claims for age discrimination, retaliation, violation of the Employee

Retirement Income Security Act of 1974 ("ERISA"), breach of contract, breach of implied contract, and intentional infliction of emotional distress. Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 21]. Plaintiff has filed her response in opposition [Doc. No. 28] and Defendant has replied [Doc. No. 31]. The matter is fully briefed and at issue.

## UDISPUSTED MATERIAL FACTS

Plaintiff (and her husband until his death in the early 1980's) owned Matador Processors, Inc. from approximately 1973 until approximately May 2015. In May 2015, Defendant purchased Matador's assets from Matador's creditor through a Chapter 11 bankruptcy proceeding. Defendant did not acquire Matador's debts as a result of the purchase. At the time of Defendant's purchase, Matador employed less than twenty individuals.[1]

Chris Allensworth, Defendant's President, and Rick Jackson, its Director of Sales and minority owner, decided to hire Plaintiff and retain other Matador employees after the purchase was complete. No written contract was executed by the parties regarding the terms of Plaintiff's employment, nor was Plaintiff offered a retirement program. Defendant's decision to hire Plaintiff was motivated by her forty-year experience in manufacturing chili rellenos and the guidance she could

---

[1] Plaintiff testified that at the time of Defendant's purchase, Matador had approximately twelve or fifteen employees. *See* Depo. of Betty Wood at 25:17-25 ("Wood Depo."), Ex. 1 to Def. Mot. for Summ. J. [Doc. No. 21-1].

2

provide MPP based on her experience. Jackson hired Plaintiff, and Jackson is the only person Plaintiff spoke with regarding Defendant's decision to hire her as an employee.

Plaintiff's job duties included general office duties on an as-needed basis, laundering employee aprons and running company errands. Plaintiff did not have any management or decision-making authority, and she was not authorized to make decisions relating to sales, vendors, creditors, strategic decisions, the purchase of machinery or any other management decisions.[2] At the time she was hired, Plaintiff was eighty-five (85) years old.

Plaintiff and Jackson began to experience tension in their work relationship. For example, Plaintiff felt that the new management did not devote enough attention to sales. For his part, Jackson felt like Plaintiff was still trying to run the company and was unhappy with every decision Defendant made in the management of the business. Plaintiff thought that Jackson was rude because he was allegedly not

---

[2] In her response, Plaintiff notes that Defendant did not purchase any of Matador's debt from the bankruptcy proceedings. As a result, Plaintiff contends, she was the sole person responsible for Matador's bills and debts, and had authority to speak with Matador's prior vendors since new management refused to do so. *See* Pl. Resp. Br. at 9. Plaintiff does not adequately dispute the charge that she had no managerial role or decision-making authority, nor does she supply any citation to record evidence to support her assertion; the Court, therefore, rejects the assertion. Plaintiff offers no counter affidavit, deposition testimony, response to interrogatories or requests for admissions to demonstrate any fact in controversy in this regard.

3

dependable, would not listen to her, and did not discuss anything with her. Jackson also disapproved of Plaintiff's reference to herself as the "Head Nigger In Charge," or HNIC, when she had owned Matador[3] and her use of the term "the Mexicans" or "Mexican Workers" in reference to Matador's Hispanic employees.

In Fall 2015, Plaintiff wrote an air conditioning company and asked them to repossess Matador's air conditioning unit. Her letter stated, in pertinent part:

*Good Morning Mark and Brad –*

*Matador sold May 5th, 2015 – the new owners refuse to take care of this small balance covering the Compressor to provide air conditioning for THEIR new employees.*

*Can you repossess the unit? I wish you could ….*

Plaintiff admits she did not have authority to ask the company to repossess the unit, but she felt responsible for equipment sold to Matador prior to Defendant's acquisition, since Defendant did not acquire Matador's debts as a result of the purchase.

In December 2015, Jackson learned that Plaintiff had asked the air-conditioning company to repossess the unit and decided Defendant could no longer

---

[3] At her deposition, Plaintiff testified the phrase was used "for years" in the company as a joke and she "was raised in the generation when the blacks were niggers, then they were colored, and then they were called black." *See* Wood Depo. at 76:7-15—77:1-8. After Defendant purchased Matador, Plaintiff stated she stopped using the phrase "in that context" since she was no longer in charge of the company. *Id.* at 78:1-15.

4

tolerate Plaintiff's apparent indifference to the limitations of her new position and racially derogatory and insubordinate behavior. Jackson concluded Plaintiff should be terminated and spoke with Allensworth about terminating Plaintiff's employment. Allensworth approved Jackson's recommendation for Plaintiff's termination. On or around December 30, 2015, Jackson terminated Plaintiff's employment.

Plaintiff's allegations of age discrimination relate only to Jackson's conduct. Plaintiff alleges her age was "mentioned several times" by Jackson, but she is unable to recall any specific details or context regarding any alleged age-based comments. As noted *supra*, Plaintiff felt Jackson was rude, did not listen to her and did not discuss anything with her because she was older. In this regard, Plaintiff's allegation that her termination was discriminatory is based on Defendant's hiring of Jalie "Jodi" Lankford ("Lankford"), who was fifty-eight (58) years old at the time. Lankford was employed to perform accounting and bookkeeping work; Plaintiff never performed accounting and bookkeeping work during her employment. Plaintiff never made any complaints about discrimination during her employment.

**STANDARD OF DECISION**

Rule 56(a), Federal Rules of Civil Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The

5

Court views the material undisputed[4] facts in the light most favorable to the nonmoving party. *T.D. v. Patton*, 868 F.3d 1209, 1219 (10th Cir. 2017). The Court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter asserted, but to determine whether there is a genuine issue for trial. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id*.

Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir.

---

[4] To determine which facts are not in genuine dispute, the Court must disregard any unsupported allegations, legal conclusions, or legal arguments couched as facts that appear in either party's statement of material facts or response thereto. *See, e.g., Chavez v. County of Bernalillo*, 3 F. Supp. 3d 936, 949 n. 4 (D.N.M. 2014).

2004). Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007).

## DISCUSSION

**I.  Age Discrimination and Retaliation**

The Age Discrimination in Employment Act (ADEA) makes it illegal for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, the term "employer" "means a person engaged in an industry affecting commerce who has *twenty or more employees* for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …." 29 U.S.C. § 630(b)(emphasis added). Defendant contends Plaintiff's ADEA claim fails as a matter of law because during her employment, and at the time of her termination, Defendant did not employ more than fifteen people at any given time. Mot. at 9.

Plaintiff states a genuine dispute exists because she "believes" at least twenty people were employed during her work and her criticism of Defendant's affidavit in this regard as a self-serving sham affidavit. *See* Pl. Resp. at 16. Plaintiff's argument is unpersuasive for two reasons. First, Plaintiff's "belief" that at least twenty people were employed by Defendant contradicts her deposition testimony. In none of the

7

summary judgment evidence cited by Plaintiff is the contention that Defendant had at least twenty employees after its purchase of the company.[5] Second, as stated above, Plaintiff has the burden, at this stage, to go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact; unsupported conclusory allegations do not create an issue of fact. Accordingly, Plaintiff's "belief" that Defendant employed at least twenty people is insufficient to withstand summary judgment, as is her conclusory allegation that Defendant has presented a "sham affidavit." Defendant's motion on this issue is granted.

Nonetheless, as Defendant notes, Oklahoma's Anti-Discrimination Act (OADA), which likewise makes it unlawful to discharge or otherwise discriminate against an individual because of her age, 25 OKLA. STAT. §1302, contains no requisite numerical threshold. The legal analysis applicable to Plaintiff's claim under the OADA is the same as that for an ADEA claim. *See LeFlore v. Flint Indus., Inc.*, No. 98-5024, 1999 WL 89281, at *3 n. 4 (10th Cir. Feb. 23, 1999) (unpublished) (affirming district court's holding—unchallenged on appeal—that the legal analysis for plaintiff's OADA claim was the same as his ADEA claim).

---

[5] Plaintiff's charge with the EEOC alleged Defendant had "15-100" employees. *See* Pl. Resp. Br. at Ex. 4 [Doc. No. 28-4].

Where an employee's age discrimination claim relies exclusively on circumstantial, rather than direct, evidence, courts apply the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Roberts v. Int'l Bus. Mach. Corp.*, 733 F.3d 1306, 1309 (10th Cir. 2013).[6] Under this framework, a three-step process is employed: "[i]f a terminated employee can make a prima facie case of discrimination, the burden shifts to the employer to articulate a nondiscriminatory reason for firing the employee. If the employer can do that, the employee picks up the burden once more and can survive summary judgment by identifying evidence that could support a reasonable jury's concluding that the employer's proffered rationale is a mere pretext for discrimination." *Id*. (citations omitted). To establish pretext, an employee must show there is enough inconsistency or implausibility in her employer's stated explanation for the firing that a reasonable trier of fact could find it unworthy of belief. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

Assuming, for purposes of the instant motion, that Plaintiff has established a prima facie case of age discrimination,[7] the Court finds she has not overcome

---

[6] Plaintiff acknowledges her age discrimination claim is based on circumstantial evidence; thus, the burden-shifting framework announced in *McDonnell Douglas* applies. *See* Pl. Resp. Br. at 18-19.

[7] To establish a prima facie case of age discrimination, a plaintiff must show: (1) she is a member of the class protected; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably

Defendant's legitimate, nondiscriminatory reasons for her termination. Plaintiff seems to believe Defendant's stated reasons for firing her are implausible because a co-worker never heard her use derogatory language, and she felt responsible for payment of the air conditioning unit. But Plaintiff acknowledges that she had used the term "Head Nigger In Charge" and referred to Hispanic employees as "the Mexicans." She also acknowledges that she did not have authority to order the repossession of Defendant's air conditioning unit. In addition, Plaintiff is unable to recall any specific details or context regarding any age-based comments. She also acknowledges that Lankford was hired to perform accounting and bookkeeping work, two duties Plaintiff *never* performed.

In discussing the quantum of evidence to establish pretext, the Tenth Circuit has noted that the factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a *determinative factor* in the employer's actions—simply disbelieving the employer is insufficient. *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (citing *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005)). Thus, the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly

---

than others not in the protected class. *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010).

believed those reasons and acted in good faith upon those beliefs. *Id*. Stated another way:

> [T]he relevant "falsity" inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue, or whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination. The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a "super personnel department," second guessing employers' honestly held (even if erroneous) business judgments.

*Young*, 468 F.3d at 1250 (citations omitted). In sum, to suggest pretext, Plaintiff would have to advance evidence that Defendant's decision to terminate her employment, whether wise or mistaken, was not honestly held. This she has not done, and cannot do, with the record before the Court. Plaintiff has failed to produce sufficient evidence of pretext, and accordingly, Defendant's motion on this issue is granted. *See id.* ("[A] plaintiff's prima facie case, combined with *sufficient evidence* to find that the employer's asserted justification is false, *may permit* the trier of fact to conclude that the employer unlawfully discriminated.")(quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 148 (2000)(emphasis in original).

The Court finds summary judgment is also warranted as to Plaintiff's allegations of retaliation. In order to establish a prima facie case of retaliation, Plaintiff needed to show: (1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer

contemporaneously or subsequent to the employee's protected activity; and (3) a causal connection between such activity and the employer's action. Here, Plaintiff admits that she never made any complaints about discrimination during her employment. *Compare* Def. Statement of Undisputed Material Facts at ¶ 12 *with* Pl. Resp. Br. at 12. Moreover, Plaintiff's EEOC charge neither alleges she was retaliated against nor provided fair notice of a retaliation claim.[8] Defendant's motion on this issue is granted.

## II.   ERISA

Plaintiff's state court Petition alleged that a possible motivation in her termination was "Plaintiff's full vesting in the Defendant's retirement program which was scheduled to occur on January 1, 2016." Petition, ¶ 20 [Doc. No. 1-1]. Plaintiff went on to allege that Defendant's decision to terminate her resulted in her "not being able to vest under the terms of Defendant's plan," *id*. ¶ 21, and "[s]uch action [was] an unlawful interest with ERISA rights which caused injury to the Plaintiff…." *Id*. ¶ 22. However, at her deposition, Plaintiff testified that she was not

---

[8] Plaintiff's EEOC charge alleged, in sum, that she was 86-years-old, Defendant hired a younger woman, and that Plaintiff "believ[ed] that [she had] been discriminated against because of [her] age…." Pl. Resp. Br. at Ex. 4 [Doc. No. 28-4]. To this end, "each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted. A party may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances." *Mackley v. TW Telecom Holdings, Inc*., 296 F.R.D. 655, 669 (D. Kan. 2014) (citations and internal quotations omitted).

offered a retirement program during her employment with Defendant. Moreover, Plaintiff's response does not rebut Defendant's contention that she was never offered a retirement program at any point during her employment. Accordingly, Defendant's motion is granted with respect to Plaintiff's ERISA allegations.

### III. Breach of Contract

Under Oklahoma law, the elements of a breach of contract claim are: (1) the formation of a contract; (2) a breach thereof; and (3) actual damages suffered from the breach. *Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843. In support of her breach of contract claim, Plaintiff contends Jackson said she and another worker (Rick Clark) could work for Defendant "as long as they wanted," until they resigned under their own volition. Pl. Resp. Br. at 14. There are two problems with Plaintiff's contention. First, as Plaintiff conceded at her deposition, the statement at issue was made *after* Plaintiff had already been terminated. *See* Wood Depo. at 134:25—135:1-13:

> Q: Okay. So no promise was made to you that you was – you would work for the company –
> A: No.
> Q: -- until you wanted to leave?
> A: No.
> Q: Okay. And you just testified that whatever promise that was made to you by Chris Allensworth, that you would work for the company, was made at the EEOC?
> A: Yes.
> Q: Okay. And Chris Allensworth never told you this before you got fired?
> A: No.

13

Second, even assuming such promise was made prior to the commencement of Plaintiff's employment, Oklahoma follows the "employment-at-will" doctrine, and under that doctrine, "an employment contract of indefinite duration may be terminated without cause at any time without incurring liability for breach of contract." *Vice v. Conoco, Inc.*, 150 F.3d 1286, 1288 (10th Cir. 1998) (quoting *Burk v. K-Mart Corp.*, 1989 OK 22, ¶ 5, 770 P.2d 24, 26). Although an agreement that restricts the employer's power to terminate may alter the employment relationship, no such agreement (or the terms thereof) has been alleged to exist here. Thus, summary judgment is warranted on this issue. *Compare Allen v. Dayco Products, Inc.*, 758 F.Supp. 630, 632 (D. Colo. 1990) (Defendant's statement to Plaintiff "that he could have the job as long as he wanted" did not transform parties' employment at-will arrangement into contractual responsibility).

**IV.** **Intentional Infliction of Emotional Distress**

Lastly, Defendant seeks judgment as a matter of law on Plaintiff's allegations of intention infliction of emotional distress (IIED). Applying Oklahoma law, the Tenth Circuit has identified four elements to an IIED claim: (1) the tortfeasor acted intentionally or recklessly; (2) the tortfeasor's conduct was extreme and outrageous; (3) the plaintiff actually experienced emotional distress; and (4) the emotional distress was severe. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995)

(citing *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991)). As further noted by the Tenth Circuit in *Starr*:

> The Oklahoma Supreme Court has explained that liability for this tort does not extend to " 'mere insults, indignities, threats, ... [or] occasional acts that are definitely inconsiderate and unkind.' " Instead, the defendant's conduct must be "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." Nothing short of "[e]xtraordinary transgressions of the bounds of civility" will give rise to liability for intentional infliction of emotional distress.

*Starr*, 54 F.3d at 1558 (citations omitted).

Plaintiff does not set forth any of the circumstances of her firing. She only contends summary judgment would be improper on this claim "because Rick Jackson disregarded the agreement he made with [Plaintiff] and Clark." Pl. Resp. Br. at 26. The record, even viewed most favorably to Plaintiff, can hardly be construed as evidencing conduct that is "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." Conduct is not "outrageous" simply because it is tortious or injurious. Additionally, Defendant has demonstrated it had legitimate, non-discriminatory reasons for terminating Plaintiff's employment. As such, the Court cannot find that Defendant's conduct constitutes intentional infliction of emotional distress. Summary judgment on this issue is granted.

## CONCLUSION

Defendant's Motion for Summary Judgment [Doc. No. 31] is **GRANTED** as set forth herein. A judgment shall be issued forthwith.

**IT IS SO ORDERED** this 22nd day of March 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE